2001 WY 111

Linda McLEAN, Appellant (Plaintiff),

v.

HYLAND ENTERPRISES, INC.,
Appellee (Defendant).

Hyland Enterprises, Inc. Appellant
(Defendant),

v.

Linda McLean, Appellee (Plaintiff).

Robert M. McLean, Appellant (Plaintiff),

v.

Hyland Enterprises, Inc., Appellee
(Defendant).

Nos. 00–184, 00–185, 00–186.

Supreme Court of Wyoming.

Nov. 14, 2001.

Bernard Q. Phelan, Cheyenne, WY, representing Linda McLean and Robert M. Mc-Lean.

Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, WY, representing Hyland Enterprises, Inc.

Before LEHMAN, C.J.; GOLDEN and HILL, JJ., and SPANGLER, D.J., (Ret.).

GOLDEN, Justice.

[¶ 1] These three consolidated appeals arise from related facts. Rob and Linda Mc-Lean, husband and wife, worked for Hyland Enterprises. In appeals No. 00–184 and No. 00–186, the McLeans allege they both were wrongfully terminated from Hyland Enterprises in retaliation for Rob McLean's refusing to perform what he believed to be an unsafe order. They also allege they were terminated in violation of terms contained in the company's employee policy manual. Hyland Enterprises denies the claim of wrongful termination, alleges that the appropriate relief for such a claim is not a tort action but rather an administrative action pursuant to the Wyoming Occupational Health and Safety Act, Wyo. Stat. Ann. § 27–11–101 through § 27–11–114 and corresponding rules, and denies having any employee policy manual.

[¶ 2] Summary judgment was granted to Hyland Enterprises on all but one count of the complaints filed in the district court. The one remaining count was the breach of implied contract action by Linda McLean wherein she claimed her at-will employment status was modified by an employee handbook and she was terminated in violation of terms contained in the employee handbook. In appeal No. 00–185, Hyland Enterprises appeals the denial of summary judgment on this one remaining count. The district court's denial of summary judgment is not subject to appeal, and therefore appeal No. 00–185 is hereby dismissed, and that matter is remanded to the district court for further proceedings. As to appeals No. 00–184 and No. 00–186, we affirm the district court's granting of summary judgment.

## ISSUES

*Appeal No. 00–184*

[¶ 3] Appellant Linda McLean states the issues as:

> Was summary judgment proper in plaintiff's claim for wrongful discharge in violation of public policy when there is evidence that plaintiff was terminated in retaliation for her and her husband's complaints about safety and termination for refusal to work?

Appellee Hyland Enterprises' issues are:

Did the district court judge properly grant summary judgment on the violation of public policy claim?

A. Can a spouse base a claim on her husband's complaint about alleged safety violations?

B. Can a claim be sustained when there is no public policy violation?

C. Are there other remedies available that preclude this claim?

*Appeal No. 00–185*

[¶ 4] Appellant Hyland Enterprises' states the issues as:

Did a draft employment manual create an implied contract of employment under the facts of this case? Stated in more precise terms:

I. Can a reasonable employee expect that a personnel manual that she has not read or received constitute[s] an offer by her employer?

II. Does there exist consideration to support an implied contract when there is no widespread distribution of the manual and the employee has not provided any additional benefit or suffered any detriment?

Appellee Linda McLean's issues are:

A. Where an employer has represented a policy manual containing job security rules as being "our company policies," is there sufficient evidence of intent to enter an employment contract to preclude summary judgment in a wrongful termination case?

B. Where an employer has rules regarding job security, must an employee supply additional consideration over her continued employment?

*Appeal No. 00–186*

[¶ 5] Appellant Rob McLean's issues are:

A. Was summary judgment proper when evidence showed that the plaintiff's presumptive status as an "at-will" employee was modified by the company's adopted policy providing for for-cause termination and that no action would be taken against an employee who refused to perform an unsafe directive?

B. Was summary judgment proper when there was sufficient evidence for a jury to find that a well established public policy against unsafe working conditions, for which there was no other adequate remedy, was undermined by a discharge motivated by disregard of such policy?

C. Was there sufficient evidence to demonstrate a *prima facie* case?

Appellee Hyland Enterprises' states the issues as:

1. Did the district court judge properly grant summary judgment on the basis that there was no implied contract of employment? Specifically, is an undistributed manual not seen by the appellant during his employment an implied contract of employment?

2. Did the district court judge properly grant summary judgment on the violation of public policy claim? Specifically when there exists no violation can such a claim be sustained? Does there exist other remedies that preclude the claim?

## FACTS

[¶ 6] Although many material facts in this case are disputed, pursuant to the well-established standards applying to a review of summary judgment, we summarize the facts in the light most favorable to the non-moving parties. Doug Dowlin is the president and majority stockholder in Hyland Enterprises, Inc. (Hyland). Hyland engages in many different business enterprises including working on commercial water wells. Linda and Rob McLean are husband and wife. Linda was hired to work in the business office of Hyland in 1990. At that time, Hyland did not have a company policy manual in effect. Rob McLean was hired by Hyland in 1994. Mr. McLean did not fill out an employment application form. No employee policies were discussed with Mr. McLean when he was hired.

[¶ 7] Sometime in 1994, Hyland contracted with a consulting firm to draft various company operating policies and procedures. Hyland paid the consulting firm approximately $40,000 for the policy and procedure proposals. When received by Hyland, the various proposed operating policies and procedures were stored together in one book in

Mr. Dowlin's office. They covered a wide range of topics including not only employee policies but also accounting and invoicing procedures and safety policies among other topics. The proposed employee policies contained in the book were not widely distributed to employees. Rob McLean never saw the employee policies while working for Hyland.

[¶ 8] Linda McLean, because of her office position, knew of the draft policy book. Mrs. McLean alleges that Mr. Dowlin told her that the various draft policies in the book were the company's policies. When the draft policies were received, Mr. Dowlin told her that the book would be kept in his office and that she could read the policies. Mrs. McLean referred to specific sections in the book as necessary to help her complete her office duties relating to invoicing and personnel issues. She used information from the policy book concerning such issues as vacation policies and confidentiality policies as well as many others.

[¶ 9] Rob McLean was hired primarily as a welder but was asked to perform other tasks on occasion. On August 27, 1996, Mr. Dowlin met with Mr. McLean and asked him to pull a well. Mr. Dowlin told Mr. McLean to take a particular mast truck for the job. This truck had been modified in-house by Hyland. Mr. McLean had several concerns regarding the adequacy of the modified mast truck to pull the well safely and expressed these concerns to Mr. Dowlin. Mr. Dowlin disagreed with Mr. McLean, believing that the truck was adequately designed and modified to do the job. Mr. McLean, however, continued to express concerns and refused to accept the assignment using that particular truck. Mr. Dowlin fired Mr. McLean for his refusal to use the modified mast truck.

[¶ 10] Mr. McLean contacted the Division of Workers' Safety and Compensation of the Wyoming Department of Employment (the Division) and filed a complaint alleging he had been fired for refusing an unsafe work assignment. On September 5, 1996, Mr. Dowlin told Linda McLean that Rob McLean had better get on with his life and stop causing trouble and that she was replaceable. On September 20, 1996, Mr. Dowlin fired Linda McLean. Mr. Dowlin refused to give a reason for the termination, saying only that

Mrs. McLean was an at-will employee and he did not have to give a reason for terminating her. Mrs. McLean complained to the Division that she had been fired in retaliation for her husband's report to the Division.

[¶ 11] The Division investigated the McLeans' complaint that the mast truck was unsafe, that Rob McLean had been fired in retaliation for refusing to run the truck, and that Linda McLean had been fired in retaliation for her husband's reporting the situation to the Division. The Division inspected the mast truck on September 6, 1996, and interviewed several Hyland employees. The Division issued its final report on November 7, 1996. The Division determined that the mast truck at issue was safe for the proposed job. The Division also determined that there was not enough credible evidence to support a prima facie case of retaliatory termination by the McLeans against Hyland. No notice of violation was issued.

[¶ 12] Having failed to receive satisfactory relief from the administrative investigation, the McLeans proceeded to file the instant lawsuits. Linda McLean sued Hyland alleging wrongful termination, breach of contract, breach of covenant of good faith under both contract and tort theories, and intentional infliction of emotional distress. Summary judgment in favor of Hyland was granted on all counts except the count for breach of contract. In appeal No. 00–184, Mrs. McLean appeals only from the granting of summary judgment on the count for wrongful termination. In appeal No. 00–185, Hyland appeals from the denial of its motion for summary judgment on the count for breach of contract.

[¶ 13] Rob McLean filed suit against Hyland alleging wrongful termination and breach of contract. Summary judgment in favor of Hyland was granted on both counts. In appeal No. 00–186, Rob McLean appeals the granting of summary judgment on both counts.

**STANDARD OF REVIEW**

[¶ 14] The standard of review applied by this Court in reviewing the granting of summary judgment is well-settled.

When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record. We separate the formal and pretended from the genuine and substantial so only the latter may be considered in eliminating the burden of a formal trial if only questions of law are left to decide; there must be no issue of material fact to decide. *Weaver v. Blue Cross–Blue Shield,* Wyo., 609 P.2d 984, 986–987 (1980). A material fact, expressed in various ways, is one having legal significance which would in a given case control the legal relations of the parties; one upon which the outcome of the litigation depends in whole or in part; one on which the controversy may be determined; one which will affect the result or outcome of the case depending upon its resolution; or one which constitutes a part of the plaintiff's cause of action or the defendant's defense. *Johnson v. Soulis,* Wyo., 542 P.2d 867 (1975). Summary judgment affords an opportunity for prompt disposition of a lawsuit in its early stages, permitting an end to unfounded claims and avoiding the expense of a full-fledged trial to both litigants and the state's judicial machinery. *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976).

*Reno Livestock Corp. v. Sun Oil Co. (Delaware),* 638 P.2d 147, 150–51 (Wyo.1981).

## DISCUSSION

### Dismissal of Appeal No. 00–185

[¶ 15] The district court denied Hyland's motion for summary judgment on Linda McLean's claim for breach of an implied employment contract. In denying the motion for summary judgment, the district court specifically held that "there is a genuine issue of material fact, whether Hyland's conduct with respect to the employee manual manifested an intent to enter into an employment contract with" Linda McLean. On the agreement of both parties, the district court certified the denial of the motion for summary judgment to this Court pursuant to W.R.C.P. 54(b).

[¶ 16] Although both parties agreed to the certification, and thus no objection has been made to this Court's jurisdiction, this Court must examine its jurisdiction to decide the issue of the denial of summary judgment presented in appeal No. 00–185. "Ordinarily this Court refrains from inquiring into questions not raised by the parties; however, because the right of appeal is statutory and jurisdictional, we have a duty to determine that the appeal has been properly taken so as to invoke our jurisdiction." *Basin Elec. Power Coop., Inc. v. Dep't of Revenue, State of Wyo.,* 970 P.2d 841, 847 (Wyo. 1998). If this Court does not have jurisdiction, it must dismiss the appeal.

[¶ 17] A denial of a motion for summary judgment is an interlocutory order and as a general rule is not subject to appeal. *In Re MSVW,* 965 P.2d 1158, 1161 (Wyo. 1998); *State Farm Mutual Auto. Insurance Co. v. Shrader,* 882 P.2d 813, 820 (Wyo.1994); *Equality Bank of Evansville, Wyo. v. Suomi,* 836 P.2d 325, 330 (Wyo.1992) ("the right to appeal does not lie from a denial of a motion for summary judgment, as such is not a final order"). This Court has recognized two exceptions to this general rule. First, a denial of summary judgment is appealable if it is coupled with the grant of a cross-motion for summary judgment. *Lieberman v. Wyoming.com LLC,* 11 P.3d 353, 356 (Wyo.2000) ("One exception we have adopted is that, when the district court grants one party's motion for a summary judgment and denies the opposing party's motion for a summary judgment and the district court's decision completely resolves the case, both the grant and the denial of the motions for a summary judgment are subject to appeal."). The other exception is a denial of summary judgment regarding the issue of qualified immunity.

*Lawson v. Garcia,* 912 P.2d 1136, 1138 (Wyo. 1996) ("denial of a motion for summary judgment on the basis of qualified immunity is an appealable final order").

[¶ 18] The denial of Hyland's motion for summary judgment on the issue of breach of contract does not fit any recognized exception. The district court denied the motion for summary judgment because it determined that there are triable issues of material fact to be resolved. This denial is not a final, appealable order.

[¶ 19] In this case, the trial court directed the entry of a final judgment on the denial of summary judgment and certified the judgment to this Court pursuant to W.R.C.P. 54(b). The district court is without authority, however, to certify a judgment under W.R.C.P. 54(b) unless the judgment disposes of at least one separate claim of a multi-claim action. There must be a final decision, that is, "an ultimate disposition of an individual claim." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956). A trial court's Rule 54(b) certification does not give this Court jurisdiction to decide an appeal from an order that in fact is not final.

[¶ 20] As discussed above, the denial of summary judgment at issue is not a final order. The denial of summary judgment does not determine the merits of the controversy. It is simply a determination by the district court that a trial is necessary to resolve issues of material fact. Because the denial of summary judgment in this case is not a final order, the district court was without authority to certify the judgment to this Court pursuant to W.R.C.P. 54(b). This Court is without jurisdiction to decide the merits of this appeal, and appeal No. 00–185 is hereby dismissed. *Hansen v. Little Bear Inn Co.,* 9 P.3d 960, 965 (Wyo.2000); *Wolter v. Equitable Resources Energy Co., Western Region,* 979 P.2d 948, 953 (Wyo.1999). The matter is remanded to the district court for further proceedings.

## *Wrongful Termination*

[¶ 21] Both Linda and Rob McLean are appealing the grant of summary judgment in favor of Hyland on their respective claims of wrongful termination in violation of public policy. For purposes of their wrongful termination claims, the McLeans accept that they were employees at will. The at-will employment doctrine is firmly rooted in Wyoming and is based upon contract principles. The doctrine of at-will employment provides that employment is presumed to be at will unless an express or implied contract states otherwise. Either party may terminate at-will employment at any time for any reason, or for no reason at all. *Boone v. Frontier Refining, Inc.,* 987 P.2d 681, 685 (Wyo.1999).

[¶ 22] As our previous jurisprudence has shown, this Court has steadfastly resisted judicially creating any exceptions to the doctrine of at-will employment in this state. The at-will employment doctrine preserves stability in the business community because "employers' and employees' decisions remain subject only to the express or implied contracts into which they have voluntarily entered or subject to statute." *Townsend v. Living Centers Rocky Mountain, Inc.,* 947 P.2d 1297, 1299 (Wyo.1997).

[¶ 23] We have recognized a limited exception to the at-will employment doctrine to the extent that an employee may not be terminated for a reason that violates public policy. This public policy exception is narrow in scope to avoid unreasonably eliminating employer discretion in terminating at-will employees.

[¶ 24] In order to prevail on a claim of wrongful termination against public policy, a plaintiff must satisfy two requirements: 1) the termination violated a well-established public policy; and 2) no other remedy is available to protect the interests of the terminated employee or of society. *Boone,* 987 P.2d at 688. This Court strictly applies both elements of the claim of wrongful termination. First, there must be a violation of a strong and well-established public policy. *Drake v. Cheyenne Newspapers, Inc.,* 891 P.2d 80, 82 (Wyo.1995) (no public policy violated when employee not allowed to exercise right to free speech in the workplace); *Dynan v. Rocky Mountain Federal Sav. & Loan,* 792 P.2d 631, 640 (Wyo.1990) (internal loan approval rules not an issue of public policy). Second, there also must not

be any other remedy available. *Hermreck v. United Parcel Service, Inc.*, 938 P.2d 863, 865 (Wyo.1997) (collective bargaining agreement available to vindicate employees' rights and public policy); *Allen v. Safeway Stores Inc.*, 699 P.2d 277, 284 (Wyo.1985) (both Wyoming Fair Employment Practices Act and 42 U.S.C. § 2000e et seq. (1982) provide remedies for termination based on sex discrimination). Because of the narrow scope of the public policy exception, this Court to date has only recognized the application of this exception in response to the termination of an employee in retaliation for filing a worker's compensation claim. *Griess v. Consolidated Freightways Corp.*, 776 P.2d 752 (Wyo.1989).

[¶ 25] The McLeans now argue that this Court should recognize a claim for wrongful termination when a termination is in retaliation for an employee's reporting an unsafe working condition. Hyland does not argue against the proposition that it is a well-established public policy in Wyoming that employees are entitled to a safe working environment. We agree that providing a safe working environment to employees is a well-established public policy. *Abeyta v. Hensley*, 595 P.2d 71, 73 (Wyo.1979) ("The nondelegable duty of a master or employer to provide an employee with safe working conditions ... has been established in Wyoming for a long time."); *see Engen v. Rambler Copper & Platinum Co.*, 20 Wyo. 95, 126, 121 P. 867, 874 (1912); *McBride v. Union Pacific Ry. Co.*, 3 Wyo. 247, 252, 21 P. 687, 688 (1889).

[¶ 26] The legislature officially recognized this public policy with the passage of the Wyoming Occupational Health and Safety Act (WOHS Act), Wyo. Stat. Ann. §§ 27–11–101–114, which, among other things, requires every employer to "furnish to his employees, a place of employment and employment which are free from recognized hazards that are causing or that are likely to cause

death or serious physical harm." Wyo. Stat. Ann. § 27–11–105(b)(vi)(A) (LexisNexis 2001). A critical element in maintaining a safe work environment is reporting by employees of unsafe conditions. The Wyoming Legislature has recognized the importance of employee reporting of unsafe conditions and protects them by prohibiting an employer from discharging an employee or in any manner discriminating against an employee for reporting unsafe conditions.[1] Thus, the well-established public policy that we now recognize is a policy requiring employers to provide a safe workplace, and included in that policy is the related goal of encouraging employees to report unsafe working conditions.

[¶ 27] However, not every employment termination that has the effect of violating public policy is actionable. Having satisfied the first prong of a claim for wrongful termination against public policy by finding that a well-established public policy has been violated, we now must look to the second prong. The McLeans contend that this Court must recognize the tort of wrongful termination against public policy under these facts because there is no other remedy available to protect the interests of the terminated employee or of society.

[¶ 28] The McLeans argue that there is no available remedy provided under the WOHS Act. The McLeans' position is that, while the Wyoming Legislature has acknowledged the public policy of protecting employees who report unsafe conditions, it has failed to provide any remedy to vindicate either public policy or an employee's interests. The McLeans acknowledge that there ostensibly is a remedy available in Wyoming as established by administrative rule. The McLeans argue that this administrative remedy as established by rule lacks appropriate statutory authority and is therefore void. The argument continues that the failure of the legisla-

---

1. Wyo. Stat. Ann. § 27–11–109(e) (LexisNexis 2001) provides: "No employer shall discharge or in any manner discriminate against any employee because such employee has filed any notice of complaint or has instituted, or caused to be instituted, any proceeding under or related to this act or has testified or is about to testify in any such proceeding, or because of the exercise by such employee on behalf of himself or others any right

afforded by this act." It seems obvious that threatening an immediate family member with termination in retaliation for the good faith exercise of an employee of any rights under the WOHS Act is a form of discrimination and prohibited under this statute. *See Moyer v. Allen Freight Lines, Inc.*, 20 Kan.App.2d 203, 885 P.2d 391 (Kan.1994).

ture to provide a statutory remedy requires this Court to impose a judicial remedy.

[¶ 29] It is true that the WOHS Act does not provide the specific remedy available under administrative rules. The remedy provided by administrative rule to a wrongfully terminated employee includes compensation "for actual harms suffered as a result of the discrimination. Such compensation includes, but is not limited to, reinstatement and back pay." Occupational Health and Safety Comm'n and Dep't Rules of Practice and Procedure, Ch. IV, Sec. 7(b)(i)(C) (1998). The WOHS Act contains no language specifically authorizing such a remedy. Remedial action specifically authorized by the WOHS Act includes such actions as the imposition of criminal sanctions and civil monetary fines against an employer for violating any of the provisions of the act, § 27–11–107, and the seeking of an injunction to prevent an employer from violating any provision of the act, § 27–11–110.

 [¶ 30] An agency may not exceed its statutory authority in promulgating rules. "Administrative agencies have only those powers expressly conferred by statute. This legal principle applies with equal force to an agency's authority to promulgate rules. Rules promulgated in excess of an agency's statutory authority are null and void." *State ex rel. Dept. of Revenue v. Buggy Bath Unlimited, Inc.*, 18 P.3d 1182, 1185–86 (Wyo. 2001) (citations omitted). Relying upon similar authority, the McLeans argue that the failure of the legislature to include a specific statutory remedy precludes the administering agency from promulgating rules that include the current remedy, thus making the rules void.

[¶ 31] The McLeans' argument fails because it does not take into account the broad statutory grant of authority to the Wyoming Department of Employment (Department) and the Wyoming Occupational Health and Safety Commission (Commission) under the WOHS Act. Wyo. Stat. Ann. § 27–11–105 grants broad authority to both the Department and the Commission. Section 27–11–105(a)(ii) grants the Department, in consultation with the Commission, the power and the duty to "develop and formulate, a comprehensive program for the prevention, control and abatement of unsafe and unhealthy

working conditions." Section 27–11–105(b)(i) grants the Commission the power and duty to "prescribe rules of practice and procedure." Section 27–11–105(b)(ii) grants the Commission the power and duty to "promulgate, devise, formulate, adopt, amend, and repeal rules and regulations."

[¶ 32] The legislature granted both the Commission and the Department broad powers. Indeed, the legislature charged these bodies with the duty to "develop and formulate, a comprehensive program" that will ensure workplace safety in Wyoming. As already stated, a critical element in any effort to maintain a safe work environment is promoting the reporting of unsafe conditions by employees. The legislature specifically passed legislation protecting employees who report unsafe working conditions. Under the broad grant of authority, and the express charge given to the Department and the Commission, they have express authority from the legislature to fill in the blanks and determine how the statutory protection will be administered.

 [¶ 33] This broad grant of authority is appropriate in this instance. Wyoming's Occupational Health and Safety Act is patterned after the federal Occupational Safety and Health Act. The Department and the Commission thus have guidance from federal law and regulations in establishing Wyoming's program. The administrative procedures and remedy adopted in Wyoming are almost identical to the procedures and remedy under the federal Occupational Safety and Health Act. The legislature may grant broad authority for the promulgation of rules creating an administrative procedure and remedy for discrimination complaints when such rules are to be patterned after the rules of a corresponding federal program.

 [¶ 34] Pursuant to the Wyoming Administrative Procedures Act, a rule is valid (and thus may be signed by the governor) if it is "within the scope of the statutory authority delegated to the adopting agency" and "appears to be within the scope of the legislative purpose of the statutory authority." Wyo. Stat. Ann. §§ 16–3–103(d)(i), (ii) (LexisNexis 2001). We hold that the rules creating an administrative procedure and

remedy for discrimination complaints not only comply with the express statutory authority, they certainly fall "within the scope of the legislative purpose of the statutory authority."

[¶ 35] This conclusion is supported by the fact that the Wyoming Legislature has not amended the applicable statutes since the rules at issue were initially passed in 1984.[2] Given the length of time the rules have been in effect, it can be assumed that the legislature is aware of the rules. Legislative inaction on this issue is an indication of legislative intent. Because the legislature has not acted in any manner contrary to the rules, an assumption arises that the rules have the tacit consent of the legislature. *Town of Pine Bluffs v. State Bd. of Control of State of Wyo.*, 647 P.2d 1365, 1367 (Wyo.1982) ("Administrative interpretation of a statute is . . . entitled to weight when the legislature has failed over a long period of time to make any change in the statute, since the failure to change the statute is some indication of an acquiescence by the legislature to administrative interpretation."). Thus, the rules providing for an administrative procedure and remedy for discrimination complaints are valid as they are expressly authorized under the broad grant of authority contained in the Wyoming Occupational Health and Safety Act and reflect legislative intent.

[¶ 36] The McLeans next argue that, even if an administrative remedy exists, this remedy is not adequate to protect the rights of an employee. The McLeans take issue specifically with the administrative procedure involved. The administrative remedy requires an employee to file a complaint within thirty days of the alleged violation with the appropriate agency. The agency then investigates the complaint. It is left completely to the discretion of the agency whether or not to pursue the claim against the employer. If the investigating agency determines not to proceed with the complaint, there is no provision for an employee to pursue any further action. The McLeans argue that this procedure inadequately protects the rights of an employee and that this Court therefore must adopt the tort of wrongful termination to fully protect an employee's interests.

[¶ 37] Legislation such as the WOHS Act reflects the proper balance between the competing interests of employer and employee and public policy as determined by the legislature. We already have held that the rules promulgated pursuant to the legislative grant of authority under the WOHS Act are valid and accurately reflect legislative intent. Because the balance was established and has been maintained by the legislature, the McLeans' argument is more appropriately addressed to the legislative branch of government. This Court hereby declines in this situation to second-guess the policy decisions of the other branches of government and will not impose a judicial remedy where an administrative remedy has already been provided.

[¶ 38] Other jurisdictions have held similarly. The Supreme Court of Connecticut recently faced this precise issue in *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 745 A.2d 178 (2000). In *Burnham*, the Connecticut Supreme Court ruled that an at-will employee was precluded from bringing a claim for wrongful termination against public policy when the employee was allegedly terminated after reporting unsafe working conditions in violation of federal Occupational Safety and Health Act (OSH Act) standards. The Connecticut Supreme Court ruled that the claim was precluded because the federal OSH Act provided a remedy. The plaintiff in *Burnham* specifically argued that the remedy under the federal OSH Act was inadequate. The Connecticut Supreme Court agreed that the administrative remedy available was not equivalent to a common-law claim for wrongful termination but held that nothing requires the administrative remedy to be equivalent to a common law claim. The Connecticut Supreme Court reasoned that "the statutory remedial scheme [should] be adhered to since we can presume that the legislature would have provided additional relief in the statute if it thought it was necessary." *Id.* at 185

---

**2.** The rules providing the procedure and remedy for an allegation of discrimination have not materially changed since 1984.

[¶ 39] Similarly, in *Grant v. Butler*, 590 So.2d 254 (Ala.1991), the Supreme Court of Alabama declined to recognize a claim for wrongful termination against public policy in a case where at-will employees were fired for reporting certain hazardous workplace conditions to the federal Occupational Safety and Health Administration. The Alabama Supreme Court reasoned that it was for the legislature to "ameliorate some of the harshness of the employee-at-will doctrine." *Id.* at 256. The Court held that the remedy provided by the federal OSH Act was adequate to protect the interest of the public and the rights of the employee and determined that it was therefore "unnecessary to create a new tort remedy to cover this kind of situation." *Id.* at 257. *See generally Miles v. Martin Marietta*, 861 F.Supp. 73 (D.Colo.1994) (federal OSH Act provides wrongful termination remedy so common law tort not available); *Walsh v. Consolidated Freightways*, 278 Or. 347, 563 P.2d 1205, 1208 (Or.1977) (no need to extend an additional tort remedy because federal OSH Act provides a remedy for wrongful termination).

[¶ 40] We hold that there is no claim for wrongful termination in violation of public policy under Wyoming law under the circumstances of this case where an administrative remedy exists. The remedy was crafted with the implicit knowledge and consent of the legislature and any challenge to the remedy should be addressed to the legislature. Summary judgment was properly granted against both Rob and Linda McLean on their respective counts for wrongful termination.

### Breach of Contract—Employee Handbook

[¶ 41] The last remaining issue is whether summary judgment was properly granted against Rob McLean on his allegation that he was terminated in violation of terms in an employee handbook that applied to him. Mr. McLean's position is that the presumption of at-will employment is rebutted in his case because of the existence of an employee policy manual. Mr. McLean argues that the very existence of an employee policy manual creates an implied contract of employment and he can only be terminated within the terms contained in the manual. That he never saw the employee policy manual while employed is irrelevant, he contends, because

Hyland is bound by the terms of its manual. Mr. McLean declares, "[t]he important question is not whether the employee, Rob McLean, knew the contents of Hyland's rules or whether he even knew there were rules. What is important is whether the employer intended to have rules."

[¶ 42] We disagree. An employer is free to have rules without the rules being applicable to every employee. The employment relationship is a relationship based in contract. The basic elements of a contract are offer, acceptance and consideration. *Bouwens v. Centrilift*, 974 P.2d 941, 946 (Wyo.1999). An employer is free to make individual offers of employment to each individual employee. That an employer may have an employee policy manual does not mean that the policy manual automatically extends to all employees. An employer is free to hire employees as either at-will employees or "for-cause" employees and is free to have both types of employees in the workforce. Thus, the question is not whether the employer intends to have rules, but rather whether the employer intends to extend an offer to be bound by certain rules to particular employees.

[¶ 43] The specific question here, then, is whether Hyland intended to create an implied "for-cause" contract of employment with Mr. McLean. Implied employment contracts are created by "a mutual agreement and intent to promise which is found in the acts or conduct of the party sought to be bound." *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994). "The test is whether there has been an objective manifestation of assent to an employment contract containing a job security provision." *Bear v. Volunteers of America*, 964 P.2d 1245, 1250 (Wyo.1998). Assent must come from both parties. *Bouwens*, 974 P.2d at 946.

[¶ 44] In the instant case, there is no objective manifestation of an offer from Hyland to Mr. McLean. There is no evidence of any action on behalf of Hyland that could be interpreted as an offer to Mr. McLean to be bound by the terms of an employee policy manual. Mr. McLean admits Hyland never gave him a copy or otherwise

made employee policies available to him. There is no evidence that Hyland ever distributed to employees in general the book containing the policies that the McLeans allege were the official company policies.

[¶ 45] Mr. McLean contends that *Bear* supports his argument. In *Bear*, a manual of employment was generally distributed to all new employees. In *Bear*, the employee claimed that she was not bound by a disclaimer found in the general employment manual because she did not receive the disclaimer with the employment manual given to her. This Court held in *Bear* that an employee will be held to all terms in an official, widely distributed employee manual, whether or not the particular employee is aware of all terms in the manual. *Bear*, 964 P.2d at 1251. Because the issue in *Bear* dealt with the terms of the contract already formed, *Bear* is inapposite to this case in which the critical issue is whether Hyland ever made an offer.

[¶ 46] Directly on point is *Boone v. Frontier Refining, Inc.*, 987 P.2d 681 (Wyo.1999). The employee, Boone, claimed that the existence of an employment manual created an implied contract for continued employment. Boone admitted that, although he knew of the existence of the manual, and had seen it on occasion, the employer never gave him a copy and he never read the manual. The employment manual, in fact, was distributed only to members of management and some supervisors. This Court applied a contract analysis to determine if the employer had made an offer to Boone to be bound by the terms of the employment manual. The Court stated that it "looks at the external or objective manifestations of the parties' intentions as revealed by their actions. We deter-

mine whether a reasonable man in the position of the offeree would have believed that the other party intended to make an offer." *Id.* at 687 (citation omitted). This Court determined that "a reasonable person in Boone's position would not have considered the undistributed employment manual to be an offer." *Id.* at 687–88.

[¶ 47] Because there is no evidence in the record that Hyland acted in any manner that could be interpreted as offering Mr. McLean employment governed by the terms of an employee policy manual, summary judgment was properly granted on this issue. No reasonable person in Mr. McLean's position would have considered the undistributed employment manual to be an offer.

## CONCLUSION

[¶ 48] Because another remedy exists in this case, the tort of wrongful termination in violation of public policy is not available. There is no evidence that Hyland committed any act objectively manifesting assent to enter into a contract of employment with Mr. McLean by which the actions of both parties would be governed by the terms of an employee policy manual. Thus, Mr. McLean was an at-will employee and not covered by an implied contract stating otherwise.

[¶ 49] The grant of summary judgment on the issues appealed from is affirmed. Hyland's appeal of a denial of summary judgment, appeal No. 00–185, is dismissed, and that matter is remanded to the district court for further proceedings.