# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 49

### APRIL TERM, A.D. 2016

### May 16, 2016

CLYDE V. SNELL, Trustee of the
Imogene Snell Revocable Trust dated
November 16, 1993,

Appellant
(Defendant),

v.                                                                          S-15-0276

WILLIAM R. SNELL,

Appellee
(Plaintiff).

*Appeal from the District Court of Johnson County*
The Honorable William J. Edelman, Judge

*Representing Appellant:*
Drake D. Hill of Hill Law Firm, LLC, Cheyenne, Wyoming; Tonia Hanson of Hanson Law Office, LLC, Buffalo, Wyoming. Argument by Mr. Hill.

*Representing Appellee:*
H. W. Rasmussen, Attorneys at Law of Wyoming, P.C., Sheridan, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   William R. Snell (William) and Clyde Allen Snell (Allen) are remainder beneficiaries of the family trust created pursuant to the terms of the Imogene Snell Revocable Trust.  William filed an action for a trust accounting from his father, Clyde V. Snell (Clyde), who is the sole trustee and current beneficiary of the trust.[1]  The district court applied Arkansas law in accordance with the trust's choice of law provision and granted summary judgment in favor of William, ordering Clyde to produce certain trust documents to him.  Clyde appealed.

[¶2]   We conclude the district court's summary judgment order was not a final appealable order.  However, we exercise our discretion to convert Clyde's notice of appeal to a petition for writ of review and grant the writ to address the legal question of whether William is entitled to a trust accounting.  On that issue, we affirm the district court's determination that, under Arkansas law, William is entitled to an accounting and remand to the district court for immediate release of the records in the court's possession and further proceedings consistent with this decision.

### ISSUES

[¶3]   The dispositive issues in this case are:

1.      Was the district court's order appealable?

2.      If the order was not appealable, should this Court use its discretion to convert the notice of appeal to a petition for writ of review and grant the writ?

3.      Did the district court properly interpret Arkansas law in concluding that a trustee is required to account to a remainder beneficiary even though the trust does not expressly require it?

### FACTS

[¶4]   Imogene and Clyde Snell were married and had two sons, William and Allen.  In 1993, Imogene executed a revocable trust, which named her and Clyde as the initial co-trustees and slated William as successor co-trustee if either was unable to serve.  The trust contained a choice of law provision directing that it be construed and governed by

---

[1] The individuals involved in this case are all members of the Snell family.  To avoid any confusion, we will refer to them by their first names, except Clyde Allen Snell, who we will refer to as "Allen" to avoid confusion with Clyde V. Snell.

the laws of Arkansas, where Imogene was domiciled. The stated purposes of the trust were to avoid federal estate taxes and provide for Clyde after Imogene's death.

[¶5]   Imogene died in 2003, and the trust, therefore, became irrevocable. Under its terms, her estate was split between a bequest to Clyde and a family trust. The family trust states that Clyde may get distributions of income and principal under certain limited circumstances. William and Allen are remainder beneficiaries of the family trust.

[¶6]    After Imogene's death, Clyde and an Arkansas bank were co-trustees. The bank was soon replaced by William's and Allen's uncle, Glen Evans, who served as co-trustee with Clyde. In 2006, Clyde moved to Buffalo, Wyoming, where Allen lived. Mr. Evans died in 2009, leaving Clyde as the only remaining trustee, and no successor co-trustee has been appointed.

[¶7]   In 2013, Clyde proposed that the family trust be terminated and the assets be divided between the two sons. When William received the trust termination documents, he noticed that the value of an asset of the trust, an Edward D. Jones investment account, had recently fallen by over $200,000. He asked for an explanation but did not receive one.

[¶8]   William filed an action in the district court seeking an order directing Clyde "to provide sufficient material facts for [William] to protect his interests as a beneficiary of the Imogene Snell Family Trust [and] an [o]rder continuing the Court's supervision of the administration of the trust." Clyde contested the request for an accounting, and William moved for summary judgment.

[¶9]   The district court initially issued an order titled "Order Denying Motion for Summary Judgment." However, the district court's ruling was more than a simple denial of William's motion. It ruled in William's favor that he is "entitled to an accounting in order to ensure the purpose of the Trust is being achieved." But, it found that there was an issue of material fact as to "whether or not the request for an accounting is reasonable." By this ruling the district court apparently meant that there would have to be a factual determination of what records and information would constitute a "reasonable" accounting, rather than a determination of whether an accounting was reasonable at all. After issuing the summary judgment order, the district court held a hearing on "what would be a reasonable request for trust records." At that hearing, the court ordered Clyde to produce for *in camera* review a list of all trust assets and "information related to activity associated with the Edward D. Jones account from June of 2012 to present." Clyde provided the information to the district court under seal.

[¶10] The district court examined the documents *in camera* and issued an order on October 20, 2015, ruling "the information tendered is discoverable as it does not constitute an unreasonable accounting." On November 16, 2015, the district court

2

entered an "Order Nunc Pro Tunc Clarifying October 20, 2015 Order," stating that it intended to grant summary judgment in favor of William and the order was final under W.R.C.P. 54(a), "as resolving all issues in the case." Clyde appealed.

## DISCUSSION

1.   Jurisdiction

[¶11] William asked us to dismiss this appeal for lack of jurisdiction because the district court's order granting him access to the information provided by Clyde did not finally decide the case.[2] The question of whether an order is final and appealable is one of law; thus, our standard of review is *de novo*. *Northwest Bldg. Co., LLC v. Northwest Distributing Co., Inc.,* 2012 WY 113, ¶ 26, 285 P.3d 239, 245 (Wyo. 2012). *See also Poignee v. State,* 2016 WY 42, ¶ 8, ____ P.3d ____ (Wyo. 2016) (jurisdiction is a question of law subject to *de novo* review).

[¶12] Under Wyoming's rules of appellate procedure, this Court has jurisdiction over appeals from final, appealable orders. *Plymale v. Donnelly,* 2006 WY 3, ¶ 4, 125 P.3d 1022, 1023 (Wyo. 2006). *See also McLean v. Hyland Enterprises, Inc.,* 2001 WY 111, ¶¶ 19–20, 34 P.3d 1262, 1268 (Wyo. 2001). W.R.A.P. 1.05(a) defines an appealable order in pertinent part as: "(a) An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment[.]" We have identified three requirements for an order to be appealable under Rule 1.05(a). It must affect a substantial right, determine the merits of the controversy and leave no issues for future consideration. *See, e.g., CAA v. ZWA (In re KRA),* 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo. 2004); *Steele v. Neeman,* 6 P.3d 649, 653 (Wyo. 2000).

[¶13] William asserts the district court's order requiring production of the information reviewed *in camera* did not finally decide the case because the information may not be sufficient to allow him to protect his interests. In fact, in his motion for summary judgment, William sought an order directing Clyde:

> to account for all contributions, income and distributions of the trust from July 7, 2003 to the present, including but not limited to the closing statement from the sale of real property held by the trust, annual tax returns for the trust, Edward D. Jones account number . . . and to the extent transfers were

---

[2] Clyde attempted to have the case heard by this Court on two earlier occasions. He filed a petition for writ of review, which we denied in April 2015. He also filed a notice of appeal of the "Order Denying Motion for Summary Judgment" and an "Order Denying Motion to Stay Discovery and Motion for Protective Order." We dismissed that appeal because an order denying summary judgment generally is not appealable. *See, e.g., Merchant v. Gray,* 2007 WY 208, ¶ 5, 173 P.3d 410, 412 (Wyo. 2007). We also noted that it appeared the district court had not resolved William's request for judicial supervision of the trust.

3

> made to a checking or savings account of the Defendant . . . ultimate distribution from such accounts to third parties, and such other and additional information as will provide Plaintiff with sufficient information to be informed of distributions from the trust and in the alternative that the Plaintiff be provided such information from the demise of the co-trustee Glen Evans, on August 10, 2009 . . . .

William also points out that his request for judicial supervision of the trust has not been addressed by the district court.

[¶14] We agree that the district court's order releasing the information to William is not final and appealable. Although the information provided by Clyde shows the trust values and withdrawals and transfers from the investment account in 2012 and 2013, it remains to be determined whether it is sufficient to protect William's interests. It is likely the investment statements will lead to additional questions such as the purposes of the withdrawals and/or transfers and where the funds went, and he will request additional information to answer those questions. If the parties are unable to agree, the district court will need to decide whether such future requests are appropriate. In addition, William's request for continued judicial supervision of the trust remains unresolved. Thus, the district court's claim in its November 16, 2015 Order Nunc Pro Tunc that it had resolved "all issues in the case" is obviously incorrect. Given there are outstanding issues, the district court's order requiring production of the information tendered by Clyde is interlocutory in nature and not directly appealable.

[¶15] However, we may review interlocutory orders by granting a discretionary writ of review under W.R.A.P. 13. Rule 13.02 states in relevant part:

> A writ of review may be granted by the reviewing court to review an interlocutory order of a trial court in a civil or criminal action, . . . which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there are substantial bases for difference of opinion and in which an immediate appeal from the order may materially advance resolution of the litigation.

We have, in the past, exercised our discretion to issue a writ of review even though the appellant filed a notice of appeal instead of a petition for writ of review. We do not exercise this power regularly, only when the case raises a question of law and appellate review of the district court's order would materially advance resolution of the litigation. *State ex rel., Dep't of Workforce Servs., Workers' Safety & Comp. Div. v. Hartmann,* 2015 WY 1, ¶¶ 13-17, 342 P.3d 377, 381-82 (Wyo. 2015); *Schwab v. JTL Group, Inc.,*

2013 WY 138, ¶ 14, 312 P.3d 790, 795 (Wyo. 2013); *Stewart Title Guar. Co. v. Tilden,* 2005 WY 53, ¶ 7, 110 P.3d 865, 870 (Wyo. 2005).

[¶16]  This case presents a distinct question of law involving a remainder beneficiary's right to an accounting under Arkansas law.  Resolution of that legal issue will materially advance the litigation as our decision will either result in a dismissal of the action or focus further proceedings upon the adequacy of the accounting and whether continued court supervision of the trust administration is proper.  We are also cognizant of the fact that Clyde is very elderly and suffers from health issues, making timely resolution of this matter especially important. We, therefore, conclude it is appropriate to exercise our discretion to convert Clyde's notice of appeal to a petition for writ of review and grant the writ in order to resolve the legal issue of whether William is entitled to an accounting.

Remainder Beneficiary's Right to Accounting

[¶17]  The district court granted summary judgment in favor of William.   Under W.R.C.P. 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

[¶18]  This Court reviews summary judgment orders *de novo,* meaning that:

> "[w]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.  If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial."

*Rogers v. Wright,* 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016), quoting *Inman v. Boykin,* 2014 WY 94, ¶ 20, 330 P.3d 275, 281 (Wyo. 2014) (internal citations omitted).

[¶19]  Paragraph 10.1 of the trust provides:  "This trust shall be construed and governed by the laws of the State of Arkansas, the domicile of the Grantor at the time this instrument is executed."  Relying on that provision, the district court ruled that Arkansas

law governs whether William is entitled to an accounting.[3]  In 2005, Arkansas enacted the Arkansas Trust Code (ATC), which generally follows the Uniform Trust Code.  *See* A.C.A. § 28-73-101 and 102.  With certain exceptions, the ATC applies to all trusts regardless of when they were created.  A.C.A. § 28-73-1106.

[¶20]  The ATC generally gives primacy to the express terms of the trust.  A.C.A. § 28-73-105(b) and comment.  The district court found, and the parties agree, that the Imogene Snell Family Trust does not explicitly address the rights of beneficiaries to trust accounting records.  Under many circumstances, A.C.A. § 28-73-813, which governs the trustee's duty to inform and report to beneficiaries, would fill that gap.  Section 28-73-813(a) outlines a trustee's general obligation to report:

> (a)  A trustee shall keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. Unless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of the trust.

[¶21]  However, § 28-73-813(e) states the statutory duty to report applies only to irrevocable trusts created on or after September 1, 2005, and revocable trusts that become irrevocable on or after September 1, 2005.  The Imogene Snell Revocable Trust became irrevocable upon her death in 2003.  *See generally Bailey v. Delta Trust & Bank,* 198 S.W.3d 506, 509 (Ark. 2004) (revocable trust becomes irrevocable upon settlor's death).  Thus, § 28-73-813 does not govern Clyde's duty to report.  When faced with gaps in the law, the ATC provides:  "The common law of trusts and principles of equity supplement this chapter."  A.C.A. § 28-73-106.

[¶22]  Recognizing that the reporting provision of the ATC does not address Clyde's obligation to report to the beneficiaries, the district court looked to *Salem v. Lane Processing Trust,* 37 S.W.3d 664 (Ark. Ct. App. 2001), a case that predated the ATC, to decide the issue.  In *Salem*, an Arkansas court of appeals relied upon the Restatement (Second) of Trusts in determining whether Salem, a beneficiary of the Lane Processing Trust, was entitled to a trust accounting.  It quoted the Restatement as follows:

> "Comment c to section 173 of the *Restatement (Second) of Trusts* (1959) provides:

---

[3] William suggests in his appellate brief that Wyoming law, rather than Arkansas law, should apply in this case,  and he strongly asserted that position at oral argument.  The district court's orders repeatedly state that the parties and the court agreed Arkansas law applies to this case.  William apparently agreed, at the district court level, that Arkansas law applies, and he does not present an adequate choice of law challenge or argument to this Court.  Consequently, we will not consider whether the district court erred by applying Arkansas law.

Although the terms of the trust may regulate the amount of information which the trustee must give and the frequency with which it must be given, the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust."

*Salem,* 37 S.W.3d at 666-67. Applying § 173, the Arkansas court listed several reasons why Salem was not entitled to an accounting including that there was no express trust provision requiring records be released to him, Salem had not demonstrated that access to the records was required to prevent or redress a breach of trust, and the scope of his request was unreasonable. In addition, the court recited a long history of vexatious lawsuits instigated by people acting in concert with Salem. *Id.*

[¶23] The district court in this case distilled three factors from *Salem* to be considered in determining whether a trust beneficiary has the right to a trust accounting: 1) whether the beneficiary seeking the report demonstrates that access is warranted to prevent or redress a breach of trust; 2) whether the trust document addresses the trustee's reporting responsibilities; and 3) whether the request for information is reasonable. The court determined that the first factor was satisfied because Clyde is elderly and could not explain the loss of value in the account. With regard to the second factor, the district court concluded that, although there was no express accounting requirement in the trust, its general intent was to allow William an accounting. It stated: "William, as a remainder beneficiary, a successor trustee, and the son of both the grantor and the principal beneficiary is entitled to an accounting in order to ensure the purpose of the Trust is being achieved."

[¶24] Turning to the third factor, the district court ruled there was a material issue of fact as to whether William's request for information was reasonable and initially denied William's motion for summary judgment. At a subsequent hearing on the reasonableness of William's request, the district court directed Clyde to submit, for *in camera* review, a list of trust assets and information about the Edward D. Jones account from June 2012 forward. After reviewing the materials submitted by Clyde, the district court found "the information tendered is discoverable as it does not constitute an unreasonable accounting," ordered production of the materials to William and granted summary judgment in his favor.

[¶25] Before we consider the legal question of whether William is entitled to an accounting, we are compelled to comment upon the procedures used by the district court in granting summary judgment and restricting access to the record. The district court initially denied summary judgment because it concluded there was a material issue of fact as to whether William's request for information was reasonable. We agree that reasonableness is usually a question of fact, which makes summary judgment

7

inappropriate. *See Salem,* 37 S.W.3d at 667; *Bell v. Bank of America, N.A.,* 422 S.W.3d 138, 142 (Ark. Ct. App. 2012).

[¶26] Although an evidentiary hearing is typically necessary to decide a question of fact, the district court did not conduct one. Instead, it ordered the trustee to submit information for *in camera* review. It then proceeded to decide the factual question and issued an "Order Following In Camera Inspection of the Documents" on October 20, 2015, without taking additional evidence or hearing any argument. It subsequently entered an order it called "Order Nunc Pro Tunc Clarifying October 20, 2015 Order,"[4] which granted summary judgment to William and declared the order was final "as resolving all issues in the case." Neither the district court nor the parties recited any authority for the district court to order Clyde to submit certain materials to the district court for *in camera* review or to decide a factual issue using that procedure.

[¶27] The district court, on its own, created a procedure where it defined and considered the evidence it thought was relevant, without any of the appropriate procedures typically followed in a trial or hearing. It then made a substantive decision based on that evidence without one side even knowing what the evidence was. Despite the unusual and highly questionable means the district court employed in reaching its decision, Clyde does not challenge the district court's finding that disclosure of the Edward D. Jones account information was reasonable.

[¶28] In another unusual procedural twist, the district court entered an order sealing the records presented for *in camera* review and stated: "**This matter is not subject to appeal** and this order shall seal the records that were reviewed by the Court and they shall remain under seal until ordered open by this Court or an appellate court." (emphasis added). The district court did not cite any authority for its action. Wyoming's Rules Governing Access to Court Records address confidential information in court proceedings. Rule 6 provides a partial list of records which may be restricted from public access, including "[d]iscovery material or other items submitted to a court for *in camera* review" and "[r]ecords sealed by a court." Rule Governing Access to Court Records 6(n) and (r). The rules set out procedures for designating records as confidential. *See, e.g.*, Rules 7-10. While the records submitted by Clyde may qualify as confidential under the rules, there is no indication the procedure for sealing them was followed in this case.

[¶29] Furthermore, although William designated the sealed documents as part of the record on appeal, the district court clerk did not forward them to this Court, apparently because of the district judge's order that the "matter is not subject to appeal." There is no

---

[4] "The nunc pro tunc is limited to cases where it is necessary to make the judgment speak the truth, and cannot be used to change the judgment." *Eddy v. First Wyoming Bank, N.A. – Lander,* 713 P.2d 228, 234 (Wyo. 1986), citing *Arnold v. State,* 76 Wyo. 445, 306 P.2d 368, 374 (1957). The district court's "Order Nunc Pro Tunc Clarifying October 20, 2015 Order" clearly expanded the prior ruling and, therefore, was not a proper order nunc pro tunc.

legal basis to withhold, from this Court, information the district court relied upon in making its decision. Consequently, we directed that the materials be forwarded to us. Although the procedural irregularities in this case do not affect our decision, this opinion should not be taken as approval of the procedures used by the district court.

[¶30] We turn now to the specific legal question presented in this case, i.e, whether William, as a remainder beneficiary with no present right to distributions from the family trust,[5] has the right to an accounting from Clyde even though the trust does not explicitly provide one. Clyde argues that a beneficiary does not have the right to an accounting unless the express terms of the trust impose a duty upon the trustee to report. By making this argument, Clyde ignores that, in *Salem,* the Arkansas court specifically relied upon the Restatement (Second) of Trusts §173. Section 173 recognizes a common law duty for the trustee to account to beneficiaries regardless of the trust language:

> The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

Section 173. As referenced in *Salem,* §173, cmt. c. states that "[a]lthough the terms of the trust may regulate the amount of information which the trustee must give and the frequency with which it must be given, the beneficiary is **always** entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust." (emphasis added). Under this provision, although an express accounting term may define the scope of a trust accounting, § 173 states that a beneficiary is always entitled to enough information to enforce his rights or address a breach of trust.

[¶31] Clyde next asserts that even if there is a general right to an accounting, William is not entitled to one because he is a remainder beneficiary, rather than a current beneficiary. Section 173 does not differentiate between current beneficiaries, remainder beneficiaries or contingent beneficiaries. However, other provisions of the Restatement of Trusts do address this issue. Our review of Arkansas law reveals that its courts regularly relied upon the Restatement of Trusts in resolving issues related to trusts prior to adoption of the ATC. *See, e.g.*, *Buchbinder v. Bank of America, N.A.,* 30 S.W.3d 707 (Ark. 2000) (applying Restatement (Second) of Trusts § 216 to find beneficiary waived right to hold trustee accountable for errors or omissions by consenting to the trustee's action); *Wisener v. Burns,* 44 S.W.3d 289 (Ark. 2001) (using Restatement (Second) of

---

[5] The terms of the family trust allow the trustee to make discretionary distributions from trust income to the "Grantor's children" during Clyde's lifetime.

Trusts § 4 to interpret trust language consistent with the intent of the settlor); *Riegler v. Riegler,* 553 S.W.2d 37 (Ark. 1977) (applying Restatement (Second) of Trusts § 170 to impose a high standard of good faith and prudent dealing upon trustee). It is, therefore, appropriate for us to look to other Restatement provisions to determine whether the right to information under §173 applies to remainder beneficiaries.

[¶32] Restatement (Second) of Trusts § 172, comment c., addresses the rights of remainder beneficiaries as follows: "The trustee may be compelled [to] account not only by a beneficiary presently entitled to the payment of income or principal, but also by a beneficiary who will be or may be entitled to receive income or principal in the future." The Restatement cites to *Shriners Hospitals v. Smith*, 385 S.E.2d 617, 618-19 (Va. 1989), as an example of a case applying that rule. In *Shriners Hospitals*, the Virginia Supreme Court stated that the remainder beneficiary's interest vested when the settlor died, and the remainder beneficiary was entitled to an accounting even though the trust did not require it and the beneficiary was not currently entitled to distributions. *Id.* In *Jacob v. Davis*, 738 A.2d 904 (Md. App. 1999), a Maryland court of appeals quoted § 172 and provided a comprehensive analysis of a remainder beneficiary's right to an accounting:

> The leading authorities on trusts are unequivocal in their articulation of the right of the remainder beneficiary to an accounting during the lifetime of the income beneficiary and after his or her death. Austin W. Scott and William F. Fratcher, *The Law of Trusts,* (Vol. IIA 4 th ed.1987) § 172 explains:
>
> A trustee is under a duty to the beneficiaries of the trust to keep clear and accurate accounts. His accounts should show what he has received and what he has expended. They should show what gains have accrued and what losses have been incurred on changes of investments. If the trust is created for beneficiaries in succession, the accounts should show what receipts and what expenditures are allocated to principal and what are allocated to income.
>
> If the trustee fails to keep proper accounts, all doubts will be resolved against him and not in his favor ...
>
> Not only must the trustee keep accounts, but he must render an accounting when called on to do so at reasonable times by the beneficiaries. Where there are several beneficiaries, any one of them can compel an accounting by the trustee. The fact that a beneficiary has only a future interest ... does not preclude him from compelling the trustee to account.

*Id.*

George Bogert, *The Law of Trusts and Trustees,* (Rev.2d ed.1983) § 961 takes a similar view:

[T]he beneficiary is entitled to demand of the trustee all information about the trust and its execution for which he has any reasonable use....

If the beneficiary asks for relevant information about the terms of the trust, its present status, past acts of management, the intent of the trustee as to future administration, or other incidents of the administration of the trust, and these requests are made at a reasonable time and place and not merely vexatiously, it is the duty of the trustee to give the beneficiary the information for which he has asked.

Both Scott, *supra,* and Bogert, *supra,* cite numerous cases in support of the rule that a remainder beneficiary is entitled to an accounting. Scott, *supra,* § 172 at 454; Bogert, *supra,* § 973.

*Jacob,* 739 A.2d at 911-12 (emphasis omitted). *See also* Restatement (Second) of Trusts §§ 82-83.

[¶33] These authorities clearly establish that, under the common law, a vested remainder beneficiary is entitled to an accounting. The district court properly ruled that William is entitled to review the documents currently under seal. Upon remand, we direct the district court to immediately release the information in its possession and conduct such additional proceedings as necessary to facilitate William's request for an appropriate trust accounting and determine whether continued court supervision of the trust administration is appropriate.

[¶34] Affirmed and remanded.