Michael SALEM *v.* LANE PROCESSING TRUST;
John E. Peterson, Jr.; Edward H. Covell; and
Walter W. Minger, as Trustee of the
Lane Processing Trust

CA 00-470 37 S.W.3d 664

Court of Appeals of Arkansas
Division IV
Opinion delivered January 31, 2001

*Skokos, Bequette, & Billingsly, P.A.*, by: *Jay Bequette*, for appellant.

*Wright, Lindsey, & Jennings LLP*, by: *Judy Simmons Henry, Roger D. Rowe, & Justin T. Allen*, for appellees.

L ARRY D. VAUGHT, Judge. This is an appeal from the Pulaski County Chancery Court's denial of appellant Michael Salem's motion for access to the records of the Lane Processing Trust (hereafter, "the Trust"). Appellant is the nephew of Clift and Dorothy Lane (hereafter, "the Lanes"), the former owners of a number of companies known together as "The Lane Processing Companies" (hereafter, "the Lane Companies"). Appellant is a former employee of the Lane Companies. In 1985, the Lane Companies were in default of a bankruptcy plan of reorganization, and the Lanes were facing personal liability for a debt of over $50 million. To avoid liquidation of the Lane Companies, the Lanes voluntarily transferred the stock of the Lane Companies (which was worthless) to appellees, John Peterson, Jr., Edward Covell, and Walter Minger. Appellees agreed to assume the positions of senior officers and directors of the Lane Companies. Appellees then created the Trust and voluntarily transferred their stock in the Lane Companies to the Trust for the benefit of themselves and the other employees. The express terms of the Declaration of Trust gave appellees sole and absolute discretion as to distribution of the proceeds of the Trust. It stated:

> The Trustees shall hold, administer, invest and reinvest the Trust Fund, collect the income therefrom and, after deducting from said income all charges and expenses properly chargeable thereto, shall, at any time and from time to time, pay or apply to or for the use and benefit of any one or more (whether all or less than all) of the members of the group consisting of the Beneficiaries living at the time of each such payment or application so much (even to the extent of the whole) of the net income and/or principal of the Trust Fund, in such amounts and proportions, equal or unequal (to the exclusion of any one or more of the persons included in said group) as the Trustees, in their sole and absolute discretion, shall deem advisable.

Appellees successfully avoided liquidation of the Lane Companies and, in 1986, sold the stock to Tyson Foods. Tyson agreed to satisfy the Lane Companies' debt and to pay the Trust approximately $35 million over the next ten years.

Soon after the sale to Tyson, the Lanes sued appellees. In 1990, after the litigation was concluded in appellees' favor, appellees distributed about $24 million to former employees of the Lane Companies with the approval of the Pulaski County Chancery Court. Fifty-percent of this amount went to former hourly and salaried employees, 18% was paid to five former officers, and 32% was distributed to appellees. Appellant received over $60,000 in this distribution. After this, appellees distributed the balance of the Trust to the former officers and themselves, making no payments to the former hourly and salaried employees. Through the accounting firm Arthur Anderson LLP, appellees secured audits of the Trust in 1990 and 1996 and provided copies of the resulting reports to appellant.

In 1998, appellant reopened the 1990 distribution case by filing a motion for access to the records of the Trust, requesting an order

> Requiring Respondents to make available to Movant for inspection and copying all records evidencing or relating in any way to all monies and properties received and disbursed by Respondents, all investments made by Respondents, all income collected by Respondents in the administration of the Trust, all charges for compensation made by Respondents against the Trust property from the inception of the Trust to date, and all documents relating in any form or fashion to the operation of the Trust[.]

Appellees resisted the motion on the ground that appellant's request was unreasonably broad.

In her remarks at the conclusion of the hearing, the chancellor noted the Lanes' history of vexatious lawsuits and libel against appellees and said that she assumed that appellant might be acting in concert with them. She explained her decision to deny his motion as follows:

> I don't think there's any general right of a beneficiary for a trust to demand to examine every record that the trust has ever had... It just doesn't work that way.... Even though ... a beneficiary has certain rights ... I think the request is not reasonable. [F]rom Mr.

Salem's own responses, it's clear to me that he is unable to articulate why he wants any information and what he wants.... I think it reasonable to assume he's not particularly interested in vindicating his own rights under the trust, he's interested in continuing a long pattern that has been established of second-guessing everything that these people have done.... [S]imply the failure to make a reasonable request is some indication that you don't have a permissible purpose for seeking it. [Y]a'll have asked for ... access to every trust record since the inception of the trust, and my answer to that is no.... I don't want ... to indicate that I do not believe that a trust beneficiary has the right to a general accounting because I do, but I don't think that's what [has] been asked for in this case.... I do believe that the letters from [appellees' counsel], while they included a lot of background information about all the bad things that had been done in the past, still didn't refuse.... I do believe that the responses that were made of the trustee, which was ... tell us reasonably what you want and we will respond to that is an adequate response.... [T]he position ... taken by Mr. Salem thereafter which is, I want to come over and see everything you have from the beginning of the trust to the end of the trust isn't reasonable.

On appeal, appellant continues to maintain that he is entitled to unlimited access to the records, but states that he is willing to accept "at a minimum ... all check registers for all accounts maintained by the Trust, along with correspondence or documents to or from the Trustees, including communications with counsel for the Trust and the Trustees, in order to learn about the operations and administration of the Trust."

Comment c to section 173 of the *Restatement (Second) of Trusts* (1959) provides:

Although the terms of the trust may regulate the amount of information which the trustee must give and the frequency with which it must be given, the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust.

 The appellant has failed to articulate any right he possesses under the Declaration of Trust that requires any records be released to him. He certainly has not justified the unlimited access as requested in his petition. Similarly, the Restatement provides that access is required to prevent or redress a breach of trust. Appellant argues that a breach can only be determined by examining the records, but Arkansas law presumes a trustee has acted in good faith and places the burden of proof upon those who question his actions

and seek to establish a breach of trust. *Gregory v. Moose*, 266 Ark. 926, 590 S.W.2d 665 (Ark. App. 1979).

The chancellor found appellant's request for access to these records was unreasonable. Generally, what is reasonable is a question of fact. *See Taylor v. Eagle Ridge Developers, LLC*, 71 Ark. App. 309, 29 S.W.3d 767 (2000). Although we review chancery cases *de novo*, we will not reverse a chancellor's finding of fact unless it is clearly erroneous. *Id.* In light of these considerations, we cannot say that the chancellor erred in denying appellant's motion.

Affirmed.

STROUD, C.J., and BIRD, J., agree.