2012 Ark. App. 445

**Ann Shull BELL and Nelson Keith Bell, Appellants**

v.

**BANK OF AMERICA, N.A., Appellee.**

**No. CA 11–816.**

Court of Appeals of Arkansas.

Aug. 29, 2012.

Rehearing Denied Oct. 10, 2012.

Ann Shull Bell and Nelson Keith Bell, pro se appellants.

Wright, Lindsey & Jennings, LLP, Little Rock, by: Stephen R. Lancaster and Gary D. Marts, for appellee.

RITA W. GRUBER, Judge.

Ann Shull Bell and her son Nelson Bell bring this pro se appeal from an order of the Lonoke County Circuit Court that approved a final accounting by appellee Bank of America, N.A., upon its resignation as trustee of the Shull Family Revocable Trust.[1] The Bells argue that they are entitled to the detailed billing records of a law firm that represented the bank during its time as trustee. We affirm the circuit court.

The Bells are the beneficiaries of the Shull Family Revocable Trust.[2] In De-

---

1. We previously ordered supplementation of the record and rebriefing. *Bell v. Bank of Am., N.A.*, 2012 Ark. App. 104, 2012 WL 286582.

2. The trust instrument was titled a "revocable trust." The Bells, however, labeled it an "irrevocable trust" in some of their pleadings.

cember 2009, the bank notified Ann Bell that it was resigning as trustee and that she had the right to appoint a successor trustee. The trust instrument did not require court approval if the bank gave sufficient notice.

On January 13, 2010, the Bells filed a petition seeking to terminate the trust. The petition alleged that the attorney who drafted the trust instrument had unduly influenced the settlor.[3] The petition also alleged that the bank had mismanaged the trust, resulting in a loss of approximately $250,000. The Bells amended their petition to also allege that the purpose of the trust was unlawful and imposed unreasonable restrictions on the trust property. The bank answered and denied that it had mismanaged the trust. It also asserted that it had complied with its duties under the trust instrument and applicable law, that the Bells had received all payments as provided by that trust, and that the Bells had not suffered any damages.

Following a March 31, 2010 hearing, the circuit court entered an order on April 20, 2010, denying the petition to terminate the trust, finding that the Bells failed to meet their burden of proof. The court, finding that the bank fully and properly accounted to the Bells, approved the bank's accounting. The bank was to remain as trustee for another twenty days and then be discharged. The court allowed the Bells ten days from the date of the hearing to appoint a successor trustee, and the court entered an order appointing BancorpSouth as successor trustee on April 12, 2010. The Bells did not appeal from the order denying their petition to terminate the trust.

By letter dated October 13, 2010, the Bells requested that Bank of America account for all fees paid to the law firm of Wright, Lindsey & Jennings, LLP (WLJ or the law firm) and sought full invoices showing all billable hours.

On November 2, 2010, BancorpSouth filed a petition asserting that Ann Bell had exercised her authority under the trust instrument to remove it as trustee. The transfer of assets from Bank of America to BancorpSouth was completed on November 4, 2010. On November 22, 2010, the circuit court entered an order discharging BancorpSouth as trustee and confirming Ann Bell's appointment of herself as successor trustee. The court found that BancorpSouth had properly accounted to the Bells and awarded it an attorney's fee of $6,798.

The present case began when the Bells filed a petition against Bank of America on January 24, 2011, seeking an accounting of the fees paid to the law firm, including the detailed billing invoices submitted by the law firm. Bank of America responded, alleging that it had fully accounted to the Bells and had been discharged by the circuit court. It further alleged that much of the delay and consequent fees resulted from actions taken by the Bells.

A hearing on the petition for accounting was held on April 21, 2011. Although no testimony was taken, the Bells argued that they were entitled to the invoices from the law firm. The bank argued that it had already accounted to the Bells and been discharged by the circuit court. The bank also submitted the itemized statements for the circuit court's in-camera review. After reviewing the documents, the court approved the payment of the fees to the law firm. The circuit court's written order was entered on April 29, 2011. The court also released and discharged the bank for all periods of its administration of the trust. The court further found that,

---

**3.** The attorney was named in the trust instrument to serve as an advisor to the trustee or any successor trustee following the death of the settlor.

should the Bells initiate further actions against the bank relating to its administration of the trust, the bank would be entitled to its attorney's fees in defending such claims. The Bells timely filed their notice of appeal.

Probate proceedings[4] are reviewed de novo, and we will not reverse the decision of the probate court unless it is clearly erroneous. *Edmundson v. Estate of Fountain,* 358 Ark. 302, 189 S.W.3d 427 (2004). Pro se appellants receive no special consideration of their argument and are held to the same standard as a licensed attorney. *Hayes v. Otto,* 2009 Ark. App. 654, 344 S.W.3d 689.

The Bells' main contention appears to be that they are entitled, under both Arkansas law and the trust instrument, to the detailed invoices provided to the bank by the law firm. We disagree. In *Salem v. Lane Processing Trust,* 72 Ark.App. 340, 343, 37 S.W.3d 664, 666–67 (2001), we held that a trust beneficiary "is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust." *Id.* (quoting the Restatement (Second) of Trusts, § 173 cmt. c (1959)). In that case, we affirmed the denial of unlimited access to all of the records of the trust by the beneficiary because the beneficiary failed to articulate a need for the documents other than a vague need to prevent or redress a breach of trust. We noted that "Arkansas law presumes a trustee has acted in good faith and places the burden of proof upon those who question his actions and seek to establish a breach of trust." 72 Ark.App. at 343–44, 37 S.W.3d at 667. The *Salem* court also agreed with the trial court's statement that the beneficiary was "not particularly interested in vindicating his own rights under the trust," but was interested in continuing a pattern of "vexatious lawsuits" derived from "second-guessing everything that [the trustees] have done." 72 Ark.App. at 342–43, 37 S.W.3d at 666.

The Bells' request for the WLJ billing records falls squarely within the circumstances of *Salem.* In their brief to this court, the Bells assert that they need access to the invoices in order to ascertain whether they were overcharged and to determine whether there has been a breach of fiduciary duty. However, in its April 20, 2010 order denying the Bells' petition to terminate the trust, the circuit court found no indication that the trust had been mismanaged. The Bells do not assert that there is any new evidence of mismanagement by the bank. Moreover, at the hearing on the petition for accounting, the Bells did not specify any reason other than that the trust was paying attorney's fees to WLJ and two other law firms, Friday, Eldredge & Clark, LLP and the Rose Law Firm.[5] Although Ann Bell ac-

4. Although this case was originally filed in the probate division of circuit court, it should have been filed in the civil division because the exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity, *Ruby G. Owen Trust ex rel. Owen,* 2012 Ark. App. 381, 418 S.W.3d 421, and courts of equity have inherent and exclusive jurisdiction of all kinds of trusts and trustees. *Id.* The same standard of review applies. *See id.*

Amendment 80 to the Arkansas Constitution abolished chancery courts and vested jurisdiction for actions in equity and law in the circuit courts. *First Nat'l Bank of DeWitt v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005). The designation of divisions is for the purpose of judicial administration and caseload management and is not for the purpose of subject-matter jurisdiction. Ark. Sup.Ct. Admin. Order No. 14.

5. The bills from the Friday Firm involved the attorney who drafted the trust instrument for the settlor and was named in the trust instrument to serve as advisor to the trustee or any successor trustee. The bills relate to the attorney's involvement in the litigation over the

knowledged that she had a statement from the bank showing the amounts paid to WLJ, she still wanted the detailed billing invoices. Bell also said that she was trying to protect the trust.

What is reasonable is generally a question of fact. *Salem,* 72 Ark.App. at 344, 37 S.W.3d at 667. Because the Bells were reasonably informed as to what the bank was paying WLJ, we cannot say that the circuit court clearly erred in denying the Bells access to the detailed billing invoices. The statement provided by the bank covers the period of January 1, 2010, through November 20, 2010, shortly after the bank transferred the trust assets to its successor trustee, BancorpSouth, and shows that the trust paid fees of $22,905.29 to the law firm during that period. This period included the litigation over the termination of the trust. The statement also shows the receipts, disbursements, and distributions made by the trust, thus complying with the requirements of Ark.Code Ann. § 28–73–813 (Supp.2011) and the trust instrument. Contrary to the Bells' argument, this statement also shows that they were receiving regular distributions from the trust, as well as having expenses such as medical bills, insurance premiums,[6] mortgage payments, and household repairs paid by the trust. The expenses for which the Bells sought reimbursement were expenses associated with the litigation they instituted and in which they did not prevail and for certain veterinary bills.

The Bells also raise arguments concerning the circuit court overruling a hearsay objection regarding an email from Nelson Bell that the bank's attorney characterized as threatening to continue the litigation if the bank did not pay the Bells $7,000. Nelson Bell objected on hearsay grounds, which the circuit court overruled. In their brief on appeal, the Bells have changed the basis of their objection to argue that the email was inadmissible as a proposed offer of settlement. It is a basic rule of appellate procedure that an argument cannot be changed on appeal. *Ball v. Foehner,* 326 Ark. 409, 931 S.W.2d 142 (1996).

The Bells also raise arguments about the fees paid to WLJ being excessive under the model rules of professional conduct, the bank engaging in self-dealing and thereby forfeiting its compensation, as well as the circuit court preemptively awarding the bank its attorney's fees should the Bells initiate further litigation against the bank over its administration of the trust. However, these arguments concerning the fees were not raised below and it is axiomatic that we will not address an argument that is raised for the first time on appeal. *City of Ft. Smith v. McCutchen,* 372 Ark. 541, 279 S.W.3d 78 (2008).[7]

Additionally, the Bells argue that the circuit court was biased against them. This argument is not preserved for our review. To preserve a claim of judicial bias for review, an appellant must have made a timely motion to the circuit court to recuse. *S. Farm Bureau Cas. Ins. Co. v. Daggett,* 354 Ark. 112, 118 S.W.3d 525 (2003); *Ashley v. Ashley,* 2012 Ark. App. 230, 2012 WL 1111381. After the court

Bells' petition to terminate the trust. The Rose Law Firm represented BancorpSouth during the period when that bank served as trustee.

6. It appears that the premiums were for medical insurance, automobile insurance, and homeowner's insurance.

7. We believe that the circuit court's statement concerning attorney's fees, although an unfortunate choice of words, was in the nature of an admonition to the Bells of the consequences they faced should they institute further litigation against the bank over these same issues.

announced its ruling, Ann Bell asked to approach the bench. When the court denied the request, Bell said she wanted another judge. Bell then said that "[t]here are other recourses that I have too.... You have no idea." Assuming arguendo that it is a proper motion, we have held that recusal is not required where, as here, the motion did not come until after the circuit court ruled against the party seeking recusal. *Powhatan Cemetery, Inc. v. Colbert,* 104 Ark.App. 290, 292 S.W.3d 302 (2009).

Affirmed.

PITTMAN and HOOFMAN, JJ., agree.