Ct. R. §§ 3-310(P) (rev. 2014) and 3-323(B) of the disciplinary rules within 60 days after the order imposing costs and expenses, if any, is entered by the court.

No. S-12-498 dismissed as moot.

Judgment of suspension in No. S-13-1149.

Wright, J., not participating.

———————

In re Rolf H. Brennemann Testamentary Trust.
Kim Abbott, beneficiary, appellant, v. John E.
Brennemann et al., Trustees, appellees.
___ N.W.2d ___

Filed June 27, 2014.    No. S-12-1029.

1. **Trusts: Equity: Appeal and Error.** Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record. But when an equity question is presented, appellate review of that issue is de novo on the record.
2. **Trusts: Records.** Where a trustee fails to maintain proper records, all doubts regarding his administration of the trust are resolved against him.
3. **Trusts: Proof.** An accounting is ordinarily an appropriate remedy for a breach of the duty to inform and report. And if ordered, the trustees would have the burden to prove its completeness and accuracy once questioned.
4. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.

Petition for further review from the Court of Appeals, Inbody, Chief Judge, and Moore and Riedmann, Judges, on appeal thereto from the County Court for Grant County, James J. Orr, Judge. Judgment of Court of Appeals affirmed in part and in part reversed, and cause remanded for further proceedings on the issue of attorney fees.

David A. Domina and Jeremy R. Wells, of Domina Law Group, P.C., L.L.O., for appellant.

Neil E. Williams and Nathaniel J. Mustion, of Lane & Williams, P.C., L.L.O., for appellees.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

CONNOLLY, J.

## SUMMARY

Kim Abbott sued the trustees of her grandfather's testamentary trust for breach of their fiduciary duties. The county court dismissed her complaint, and the Nebraska Court of Appeals affirmed. The Court of Appeals essentially concluded that although the trustees had breached their duty to inform and report, that breach was harmless.[1] We agree with the Court of Appeals' general legal framework and conclusion that the breach was harmless. But we disagree with the Court of Appeals' conclusion that annual schedule K-1 tax reports were sufficient to reasonably inform beneficiaries of the trust and its administration. And we conclude that the county court should revisit the issue of attorney fees in light of our disposition of the merits of this appeal. We affirm in part, and in part reverse and remand for further proceedings on that issue.

## BACKGROUND

### THE TESTAMENTARY TRUST

Rolf H. Brennemann (Rolf) died in 1976. His will established the "Rolf H. Brennemann Testamentary Trust." The trust was to hold shares in the "Rolf H. Brennemann Company," the primary asset of which was a 5,425-acre ranch located in Grant and Cherry Counties, Nebraska. At all material times, the trust held 42.42 percent of the company's shares, with the balance being distributed among the individual family members. The will appointed Rolf's three children, Edward Brennemann, Mamie Brennemann, and Rolf William Brennemann (Bill), as trustees. The will also provided that if any of them were unable to serve, or ceased to serve, the oldest son of that person would then serve as trustee.

The trust was to pay its net income to Bessie Brennemann, Rolf's wife, for as long as she lived. When Bessie died, the trust was to pay its net income to Rolf's three children, in equal shares. When Rolf's last child died, the trust was to distribute its holdings to Rolf's grandchildren.

---

[1] See *In re Rolf H. Brennemann Testamentary Trust*, 21 Neb. App. 353, 838 N.W.2d 336 (2013).

## FACTUAL BACKGROUND

In 1982, Edward died, at which time his oldest son, John E. Brennemann, became a trustee. In 1986, the trustees (Rolf's children Bill and Mamie, and Rolf's grandchild John) petitioned the county court to allow them to vote company stock. The trustees alleged that the company had significant liabilities, had not paid dividends, and was not providing income to the trust. The trustees alleged that John had offered to buy the ranch and that they had accepted his offer. Kim later offered to buy the ranch, but the trustees rejected her offer. The court ultimately authorized the trustees to vote the stock and sell the ranch to John and his wife. The court reviewed the purchase agreement and determined that the sale price was at or above fair market value and was the most advantageous price the trustees could secure.

The purchase agreement set forth an installment payment plan for a total purchase price of $494,021: $16,000 at the execution of the agreement, $144,000 at closing, and $344,021 in nine annual payments, with a 10-percent interest rate and a balloon payment of the unpaid principal and interest on July 1, 1996. Following the sale of the ranch, and having no other assets, the company was dissolved. In 1996, John and his wife executed two agreements with the various parties extending the original purchase agreement for 10 years and 3 years respectively, at an 8-percent interest rate.

In 1998, after Bessie died, Rolf's three children (or their issue) began receiving the trust income. In 2002, Bill died, at which time his children, including Kim, became qualified beneficiaries of the trust and Bill's oldest son became a trustee. In 2006, presumably because John had made all the payments, the bank issued a trustee's deed of reconveyance for the ranch to John and his wife.

## THE LITIGATION BEGINS

In 2009, the trust's accountant, Dan Gilg, sent a letter to Kim (and presumably other beneficiaries) indicating that the trust contained roughly $75,000 and recommending that the trust be terminated because it was "non-economical." This prompted Kim to take action because she believed that there

should have been more money in the trust. In April 2010, Kim filed a complaint against the trustees seeking a full and complete accounting of their actions and payment of income derived from the administration of the trust, along with costs and attorney fees. Following their answer and cross-petition, the trustees provided an accounting which covered January 1, 2002, through April 30, 2010, and they also provided updates throughout the proceedings.

In August 2010, Kim amended her complaint. She alleged that the accounting was incomplete and that the trustees had breached their fiduciary duties. Specifically, she alleged that they had breached their duties to maintain trust records, to properly inform and report to the beneficiaries, and to administer the trust in good faith. She also requested, in addition to the requests made in her original complaint, that the court order the trustees to pay moneys to restore the balance of the trust to what would have been there had the trustees fulfilled their fiduciary duties.

## The Trial

At trial, and in summary, Mamie testified that she believed that the trustees had properly administered the trust, that the sale of the ranch was justified by its indebtedness, that the extension agreements were done so that the trust would continue to provide income to Bessie during her lifetime, that John had made all the necessary payments for the ranch, and that the older trust documents (before 2002) were unavailable because the various banks and accounting firms had destroyed them.

John testified similarly. John also testified about the indebtedness on the ranch, about how the trustees tried to pay the debt without selling the ranch, and that he thought the trust should be terminated. John also explained that he had received trust documents from the trust's accountant, but was unable to locate them.

Kim testified that after receiving the letter from Gilg, she requested an accounting because she believed that there should have been more money to distribute to the grandchildren upon Mamie's death. She stated that she thought the trustees had

breached their duties, in essence, because the trustees could not account for the trust's activity from 1976 through 2002, because there were basically no records showing that John had made the required payments, and because of the extension agreements and lack of charged interest coming into the trust. She also stated that once she became a beneficiary, she received annual schedule K-1 tax reports, which included information such as interest, her share of income, and expenses.

The parties also presented testimony and documents regarding the trust's financial information. Josh Weiss, Kim's expert, testified that based upon his review of various documents, the trust should have had more money. Gilg, the trust's accountant, testified that Weiss' calculations did not take into account several items, such as the company's indebtedness and taxation on the ranch's sale. He also testified that all of the trustees had acted properly, that John had made all the necessary payments, and that, in his opinion, "the beneficiaries did not suffer any monetary losses by reason of the trustees' administration of the trust."[2]

## The County Court's Order

The county court made several relevant factual findings. The court found that the trustees provided each of the beneficiaries, including Kim, annual schedule K-1 tax reports "showing the beneficiaries their respective share of income and/or loss from the Trust estate." The court found that Kim requested a formal accounting from the trustees in December 2009 and that the trustees had provided a complete accounting in 2010, which "dated back to 2002." The court found that the trustees were "unable to provide documentation for the years prior to 2002 because such documentation has been destroyed."

The court noted that Kim's main argument was that because the trustees were "unable to provide documentation from 1976 to 2002, the court must therefore assume that there were breaches of duty" which caused damage to Kim. The court determined, however, that it was Kim's burden to prove that the trustees had breached their fiduciary duties and that her

---

[2] *Id*. at 363-64, 838 N.W.2d at 344.

argument was "an attempt to improperly switch the burden of proof" to the trustees.

The court concluded that Kim had not met her burden. As to the various claims of damages, the court rejected those claims. Kim asserted that the trustees could not account for $307,942.71 in principal and interest owed to the trust from the ranch's sale. The court noted that Kim

> want[ed] the court to therefore assume those payments were not received, or, that any bills, taxes and expenses the [trustees] claim were paid out of the princip[al] were not valid expenditures. Despite [Kim's] having the burden to prove these assertions, the evidence presented convinces the court those payments were in fact paid.

As to Kim's claim that the trustees had failed to collect certain interest on late payments, the court did not believe there were late payments. And even if there were, the court believed any accrued interest would have been much lower. The court also determined that the trustees would have been well within their rights to waive any late fees "considering the entire circumstance of this family trust." Finally, regarding Kim's allegation of "unaccounted princip[al] growth," the court found that Kim's expert was not credible and that the alleged damages were too speculative. The court dismissed Kim's complaint, denied Kim costs and attorney fees, and denied the trustees' request to terminate the trust.

## The Court of Appeals' Opinion

On appeal, Kim assigned as error the trial court's (1) failing to shift the burden of proof to the trustees when the trustees failed to provide a full accounting; (2) finding that she had not met that burden (which she should not have borne) when proof of her claims rested within the exclusive control of the trustees; (3) finding that schedule K-1 tax reports were sufficient accountings when no such forms were actually in evidence; and (4) failing to award attorney fees.

The Court of Appeals first addressed the burden of proof. The court began by noting: "In Nebraska, the issue of the burden of proof in testamentary trust cases has not frequently been addressed, and there is no Nebraska case law directly

addressing the issue of the burden of proof for the duty to inform and account to beneficiaries."[3] The court then cited outside jurisdictions for the proposition that there is a presumption that a trustee has acted in good faith and that the burden is on the one questioning the trustee's actions and seeking to establish a breach of trust to prove the contrary.[4]

The Court of Appeals then looked toward the Restatement (Third) of Trusts.[5] The court observed that under the Restatement, the trustee has a duty to keep records and provide reports and to show that his accounting was correct and proper.[6] Further, if the trustee does not "maintain necessary books and records,"[7] "'the presumptions are all against him, obscurities and doubts being resolved adversely to him . . . .'"[8] But the court noted that the Restatement also stated, "When a plaintiff brings suit against a trustee for breach of trust, the plaintiff generally bears the burden of proof."[9] After setting forth these propositions, the court reviewed the county court's order and concluded that it had not failed to properly shift the burden of proof, but instead had concluded that Kim had not met her initial burden.

In assessing that conclusion, the Court of Appeals focused on the trustees' alleged breach of their duty to inform and

---

[3] *Id*. at 366, 838 N.W.2d at 346.

[4] See, *In re Rolf H. Brennemann Testamentary Trust, supra* note 1 (citing *Salem v. Lane Processing Trust*, 72 Ark. App. 340, 37 S.W.3d 664 (2001); *Gregory v. Moose*, 266 Ark. 926, 590 S.W.2d 665 (Ark. App. 1979); *Estate of James Campbell, Decsd.*, 42 Haw. 586 (1958); *Jarvis v. Boatmen's National Bank of St. Louis*, 478 S.W.2d 266 (Mo. 1972); *First National Bank of Kansas City v. Hyde*, 363 S.W.2d 647 (Mo. 1962); *In re Estate of Damon*, No. 28378, 2011 WL 576588 (Haw. App. Feb. 18, 2011) (unpublished disposition listed at 125 Haw. 242, 257 P.3d 1219 (2011)).

[5] Restatement (Third) of Trusts § 83 (2007).

[6] See *id*., § 83, comments *a*. and *a(1)*. and accompanying Reporter's Note. See, also, Alan Newman et al., The Law of Trusts and Trustees § 961 (3d ed. 2010); 90A C.J.S. *Trusts* § 689 (2010).

[7] See Restatement, *supra* note 5, § 83, comment *a(1)*. at 204-05.

[8] *Id*., Reporter's Note comments *a*. and *a(1)*. at 208 (citing *Wood et al. v. Honeyman et al.*, 178 Or. 484, 169 P.2d 131 (1946)).

[9] See Restatement (Third) of Trusts § 100, comment *f*. at 68 (2012).

report. The court's analysis addressed three periods: 1976 to 2002, 2002 to 2005, and 2005 to 2009. Regarding the first period, the court concluded that Kim had met her burden because "[t]he trustees could not provide an adequate accounting of the trust from 1976 through 2002 . . . ."[10] But the court determined that contrary to Kim's central argument, the record showed that John had made all necessary payments. The court therefore found the breach harmless.

Regarding the second period, the Court of Appeals determined that Kim had not met her burden. Under the law at that time (before the adoption of the Nebraska Uniform Trust Code[11]), the trustees were required only to keep each beneficiary "reasonably informed" of the trust and its administration.[12] The court concluded that the trustees did so and that therefore, they did not breach their duty to inform and report, because they sent Kim annual schedule K-1 tax reports.

Regarding the third period, the Court of Appeals determined that Kim had met her burden. The schedule K-1 tax reports, which the court found sufficient to keep her "'reasonably informed'" did not satisfy the Nebraska Uniform Trust Code's additional reporting requirements in § 30-3878(c), which came into effect in 2005.[13] Nevertheless, the court determined that the trustees had cured the breach once they filed a full accounting (for 2002 to 2010). Thus, the court found the breach, and any related error by the trial court, harmless.

Finally, after noting that whether to award attorney fees was within the trial court's discretion, the Court of Appeals affirmed the trial court's decision not to award attorney fees. The court recited the applicable propositions of law and held simply: "Having reviewed the record, and based upon the circumstances of this case, we conclude that the trial court did

---

[10] See *In re Rolf H. Brennemann Testamentary Trust, supra* note 1, 21 Neb. App. at 370, 838 N.W.2d at 348.

[11] See Neb. Rev. Stat. §§ 30-3801 to 30-38,110 (Reissue 2008, Cum. Supp. 2012 & Supp. 2013).

[12] See Neb. Rev. Stat. § 30-2814 (Reissue 1995).

[13] *In re Rolf H. Brennemann Testamentary Trust, supra* note 1, 21 Neb. App. at 372, 838 N.W.2d at 349. See 2005 Neb. Laws, L.B. 533, § 45.

not abuse its discretion in denying [Kim's] request for attorney fees . . . ."[14] The court affirmed the trial court's order.

## ASSIGNMENTS OF ERROR

In her petition for further review, restated and consolidated, Kim assigns that the Court of Appeals erred in (1) presuming that the trustees acted in good faith and placing the burden of proof on Kim to prove breaches of trust, particularly where the trustees failed to properly maintain trust records; (2) concluding that schedule K-1 tax reports were sufficient to reasonably inform beneficiaries; and (3) not awarding her attorney fees.

## STANDARD OF REVIEW

[1] Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record. But when an equity question is presented, appellate review of that issue is de novo on the record.[15]

## ANALYSIS

We understand Kim's general position to be this: The trustees breached their duty to inform and report throughout the life of the trust. She argues that because they failed to properly maintain trust records, they cannot fully account for the trust's administration and its assets. And she argues that because they cannot fully account, it is appropriate to surcharge them for the difference between the money on hand and the money she alleges should have been there had the payments for the sale of the ranch been made to the trust and properly managed. We also understand that on appeal, Kim takes no issue with the sale of the ranch in 1986, the $160,000 downpayment at that time, or the refinancing agreements in 1996.

Regarding the Court of Appeals' decision, Kim agrees that the court's focus on the trustees' duty to inform and report,

---

[14] *In re Rolf H. Brennemann Testamentary Trust, supra* note 1, 21 Neb. App. at 375, 838 N.W.2d at 350-51.

[15] See *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011).

and whether they violated that duty, was appropriate. But Kim takes issue with the court's statements regarding the burden of proof and whether a trustee's actions are entitled to a presumption of propriety. She takes issue with the court's concluding that the trustees' distribution of schedule K-1 tax reports satisfied their duty to inform and report before adoption of the Nebraska Uniform Trust Code. She also contests the court's conclusion that any breaches of trust were harmless. And Kim argues that the court erred in failing to award attorney fees. We will address each issue in turn.

Kim first takes issue with the Court of Appeals' statements regarding the allocation of the burden of proof and a trustee's actions being entitled to a presumption of propriety. In its opinion, the court cited to outside authorities for the proposition that "the presumption is that a trustee has acted in good faith and that the burden is on the one questioning his actions and seeking to establish a breach of trust to prove the contrary."[16] Kim argues that this does not square with our law, either statutory or jurisprudential, and that the burden should always be on the trustees to be able to accurately account for the trust's administration.

Specifically, Kim argues in her brief on further review that the Court of Appeals erred in "holding a beneficiary bears the initial burden of proof that trustees failed to account . . . where she proved no accounting was rendered but was not able to prove what happened to trust funds because the records were in the trustees' sole control." Thus, it appears that Kim understood the court to require her not only to prove that she had not received an accounting, i.e., a breach of the duty to inform and report, but also to prove what happened to the trust's assets. Kim also argues that the court erred in "creat[ing] a presumption [of propriety] where . . . incomplete records were kept, no accountings were rendered annually, and no documents supported a 'catchup' accounting." Thus, it appears that Kim understood the court to have applied a presumption of propriety to the trustees' actions even where

---

[16] *In re Rolf H. Brennemann Testamentary Trust, supra* note 1, 21 Neb. App. at 367, 838 N.W.2d at 346 (citations omitted).

the trustees failed to properly account and their recordkeeping was abysmal.

[2,3] But Kim's argument misperceives what the Court of Appeals did. The Court of Appeals simply set forth the general framework for analyzing alleged breaches of trust. The Court of Appeals did not hold, however, that the trustees' actions in this case were presumed correct. This is because any presumption in the trustees' favor obviously disappeared once it became clear that they had failed to properly maintain trust records. It is well established that where a trustee fails to maintain proper records, all doubts regarding his administration of the trust are resolved against him.[17] Nor did the Court of Appeals hold that Kim was required to prove the disposition of trust assets or the accuracy of the trustees' accounting. She was required only to prove that the trustees breached their duty to inform and report; in other words, that as a beneficiary, she was entitled to certain information, and that the trustees had not provided it.[18] An accounting is ordinarily an appropriate remedy for a breach of the duty to inform and report.[19] And if ordered, the trustees would have had the burden to prove its completeness and accuracy once questioned.[20] But here, the trustees could provide only a partial accounting because they had not properly maintained trust records. Under these circumstances, ordering an accounting would be futile and the court had discretion to award "any other appropriate relief."[21] But the Court of Appeals determined that no other relief was warranted; we will discuss that conclusion in detail below.

As for the propositions themselves—that a trustee's actions are presumed proper and that the burden rests on a plaintiff to

---

[17] See, e.g., *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009); *Honeyman et al.*, *supra* note 8; Restatement, *supra* note 5, § 83, comment *a(1)*.; Newman et al., *supra* note 6.

[18] See §§ 30-2814 and 30-3878.

[19] See § 30-3890.

[20] See, e.g., *In re Estate of Marlin*, 140 Neb. 245, 299 N.W. 626 (1941); Newman et al., *supra* note 6; 90A C.J.S., *supra* note 6.

[21] See § 30-3890(b)(10). See, also, 90A C.J.S., *supra* note 6.

prove a breach of trust—we think they are correct. We first note that there is little difference between the two: to say that a court presumes that a trustee's actions are correct is simply another way of saying the burden rests on a plaintiff to prove a breach of trust. But regardless, these appear to be well-established propositions. In addition to the cases cited by the Court of Appeals, we have found other cases supporting these propositions.[22] Secondary authorities, such as the Restatement, treatises, and legal encyclopedias, likewise support these propositions.[23] And Kim has not pointed us to any persuasive authority that does not. So we see no error in the court's statements regarding a presumption of propriety and the burden of proof or in the framework the court employed.

Kim next takes issue with the Court of Appeals' substantive analysis, which it broke down into three periods: 1976 to 2002, 2002 to 2005, and 2005 to 2009. The court concluded that the trustees had breached their duty to inform and report for each period except for 2002 to 2005. Under the law at the time, absent a request for an accounting, the trustees were required only to keep Kim "reasonably informed of the trust and its administration."[24] The court concluded that the trustees' providing Kim with annual schedule K-1 tax reports was sufficient to meet that obligation. Kim argues that this was error because schedule K-1 tax reports basically offer only limited information regarding the recipient's taxable income; thus, they are not sufficient to meet the trustees' duty to inform and report.

We agree with Kim. At the time, § 30-2814 required that absent a request for an accounting, the trustees keep Kim "reasonably informed of the trust and its administration." And

---

[22] See, e.g., *Lopez v. Lopez*, 250 Md. 491, 243 A.2d 588 (1968); *Van de Kamp v. Bank of Am. Nat. Trust*, 204 Cal. App. 3d 819, 251 Cal. Rptr. 530 (1988); *Elmhurst Nat. Bank v. Glos*, 99 Ill. App. 2d 74, 241 N.E.2d 121 (1968).

[23] See, Restatement, *supra* note 9; George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 871 (2d ed. 1995); 90A C.J.S., *supra* note 6, § 600.

[24] See § 30-2814.

while there are no schedule K-1 tax reports in evidence, testimony at trial indicated that they basically contained only information regarding Kim's taxable income from the trust. As such, the trustees' providing it to Kim each year could not satisfy their duty to keep her "reasonably informed *of the trust and its administration*." So we disagree with the Court of Appeals on the scope of the trustees' breach of their duty to inform and report. We conclude that at no time during the relevant period did the trustees satisfy that duty.

The question remains whether Kim was entitled to relief. Section 30-3890 lists various remedies for breaches of trust, including an accounting, and a catchall provision allowing a court to award "any other appropriate relief."[25] Kim argues that the accounting she received was insufficient because it did not account for trust assets from the trust's inception. It went back only to 2002. Also, she asserts it lacked any supporting documentation because the trustees failed to maintain trust records. She argues that in such a situation, surcharging the trustees for any amount they cannot properly account for is appropriate, and that the Court of Appeals erred in failing to award any relief.

We disagree. Although the trustees' conduct fell below acceptable standards, we agree with the Court of Appeals that the trustees' breach of their duty to inform and report was essentially harmless. Despite the trustees' failure to properly account and maintain trust records, what records and evidence which are available show that the trust received the payments for the ranch and that the trustees appropriately managed the money.

Mamie and John both testified that John had made all the payments for the ranch, as did Gilg, the trust's accountant. The available financial records, as well as inferences that may be drawn from the evidence, support this conclusion. Exhibit 103, the original purchase agreement, required John to make payments to the Bank of Hyannis, a third-party bank which acted as trustee and held the deed of trust to the ranch.

---

[25] § 30-3890(b)(10). See, also, 90A C.J.S., *supra* note 6.

Exhibit 104, the amortization schedule, has notes indicating that John made the annual payments up until July 1996, at which time, the parties refinanced the purchase agreement. At that time, the remaining principal owed was $254,825.37. Exhibit 105 shows that there were two refinancing agreements extending the payment plans: one for 3 years with the bank (which had acquired Bill's son's interest) for $45,405.30, and one for 10 years with the other parties for $209,420.07. Those amounts totaled the remaining principal owed. In July 2006, the bank (which both held the deed of trust and had a vested interest in a portion of the proceeds) issued a deed of reconveyance for the property, which indicates that John made all of the payments. At trial, even Kim's expert admitted that a commercial bank would not issue a deed of reconveyance if there was not proof that John had made every payment.

Regarding the disposition of those payments, the record convinces us that the trustees appropriately managed the money. The ranch sold for $494,021; of that amount, $160,000 went to pay closing costs and existing liabilities. The trust was entitled to 42.42 percent of what remained, which was $141,691.71. Exhibit 101, Rolf's will, indicates that the trust was to maintain the principal while paying out the interest to the income beneficiaries. Testimony at trial indicated that each ranch payment was made up of principal and interest, and subject to significant taxation. Although the trustees could not provide a full accounting, the records from 2002 to 2010 indicated that they paid out interest income to the beneficiaries during that period. And there were no allegations that the interest had not been paid out throughout the life of the trust. Because the trustees paid out the interest to the beneficiaries, the trustees had to pay the trust's other liabilities from the principal.

The trustees would then deposit the remaining money into a Franklin Templeton income fund. The cost basis of the Franklin Templeton fund in January 2008 was $139,795.27, which was very close to the principal amount the trust was entitled to from the sale of the ranch. The record shows that the Franklin Templeton fund lost a significant amount of money during the 2008 economic downturn before the trustees withdrew the money from the fund. But no one argued

at trial that investment in the Franklin Templeton fund was irresponsible; on the contrary, Kim's own expert testified that it was reasonable at the time. And the remaining money amount squared with what Gilg represented the trust to have during litigation. Thus, our review of the record shows that the trustees' breach of their duties did not harm the trust or the beneficiaries.

[4] The final issue is whether the court should have awarded attorney fees to Kim. On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[26] The Court of Appeals concluded that "[h]aving reviewed the record, and based upon the circumstances of this case, . . . the trial court did not abuse its discretion by denying [Kim's] request for attorney fees . . . ."[27] Kim argues this was error, essentially because the trustees clearly breached their duty to inform and report, and that some sanction is necessary.

The Nebraska Uniform Trust Code explicitly provides when attorney fees are appropriate in trust administration cases. Section 30-3893 states: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

Here, the trustees clearly breached their duty to inform and report, and did so for decades. They were unable to properly account to Kim because they failed to properly maintain trust records. In such a situation, Kim had little choice but to resort to litigation to resolve any doubts about the trust's administration. Even though the trustees' conduct ultimately did not harm Kim or the trust, that became clear only *after* litigation—litigation made necessary by the trustees' breach of their duties.

Under these circumstances, we agree that the Court of Appeals erred in summarily affirming the county court's ruling

---

[26] See *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007).

[27] *In re Rolf H. Brennemann Testamentary Trust, supra* note 1, 21 Neb. App. at 375, 838 N.W.2d at 350-51.

not to award attorney fees, particularly where that ruling was premised on the county court's erroneous conclusion that Kim had failed to prove a breach of trust. But we hesitate to award fees ourselves, because we are reviewing a cold record and the county court oversaw the litigation. The county court is thus in the best position to determine, in light of our disposition of the merits of this appeal, whether "justice and equity" require attorney fees, and in what amount. We reverse, and remand for the court to do so.

## CONCLUSION

We agree with the Court of Appeals' general legal framework and ultimate conclusion that the trustee's breach was harmless. We disagree, however, with the Court of Appeals' conclusion that annual schedule K-1 tax reports were sufficient to reasonably inform beneficiaries of the trust and its administration. And we conclude that the county court should revisit the issue of attorney fees in light of our disposition of the merits of this appeal.

Affirmed in part, and in part reversed and remanded for further proceedings on the issue of attorney fees.

Wright, J., not participating.

———————

Perry Elting et al., appellees, v.
Kerwin Elting, appellant.
___ N.W.2d ___

Filed June 27, 2014.    No. S-13-551.

1. **Trial: Witnesses.** In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.
2. **Judgments: Appeal and Error.** In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.
3. ____: ____. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.